477 S.E.2d 472

**Wilkins J. WALKER, Appellant,**

v.

**THE BLUFFS APARTMENTS and Southern Development Management Co., Inc., Reg Narmour and Sentry Engineering, Inc., Defendants,**

**Of whom Reg Narmour is Respondent.**

No. 2568.

Court of Appeals of South Carolina.

Submitted Aug. 16, 1996.

Decided Oct. 7, 1996.

Michael C. Kolb, of Faucette Law Firm, Spartanburg, for appellant.

Ladson F. Howell, Jr., and Michael B.T. Wilkes, both of The Ward Law Firm, Spartanburg, for respondent.

GOOLSBY, Judge:

In this architect malpractice case, Wilkins J. Walker sued Reg Narmour claiming Narmour negligently designed the gutter system at the apartment complex where Walker resided causing him to fall and sustain injuries. The issue on appeal involves whether Walker's expert witness is qualified and whether her affidavit produced evidence of an architect's standard of care and Narmour's breach of that standard. The trial court granted summary judgment in favor of Narmour. Walker appeals. We affirm.[1]

In cases decided by summary judgment, the court must view all inferences arising from the facts in light most favorable to the nonmoving party. *Standard Fire Ins. Co. v. Marine Contracting and Towing Co.*, 301 S.C. 418, 392 S.E.2d 460 (1990). A court must grant summary judgment when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

---

1. Because oral argument would not aid the court in resolving the issues, we decide this case without oral argument pursuant to Rule 215, SCACR.

In February 1993, as Walker was leaving his residence at The Bluffs Apartments, he slipped and fell on an icy walkway outside his front door. Walker testified that ice formed where water had drained from a gutter located between Walker's apartment and the adjacent one. Walker sued Narmour, the architect who designed The Bluffs Apartments, and other parties not relevant to this appeal.

Walker claims Narmour negligently designed the gutter system because water from the gutters discharged directly outside of Walker's apartment. Walker contends Narmour, therefore, knew or should have known the discharge of water could freeze and create a dangerous condition to apartment occupants.

As evidence of Narmour's negligence, Walker submitted the affidavit of Ursula Lain. Lain is a licensed residential builder and a licensed building inspector who teaches building codes to various groups.

The trial court ruled Lain's affidavit did not state any architectural duty or breach of such a duty and that Lain is not qualified to be an expert witness because she has no experience in architectural design. We agree.

 The qualification of expert witnesses and the admissibility of their testimony is largely within the discretion of the trial court. *Creed v. City of Columbia,* 310 S.C. 342, 426 S.E.2d 785 (1993). We will not disturb a trial court's ruling to exclude or admit expert testimony absent a clear abuse of discretion. *Jenkins v. E.L. Long Motor Lines,* 233 S.C. 87, 103 S.E.2d 523 (1958). For a court to rule that an expert witness is competent, "a witness must have acquired by reason of study or experience or both such knowledge and skill in a business, profession, or science that he is better qualified than the jury to form an opinion on the particular subject of his testimony." *Botehlo v. Bycura,* 282 S.C. 578, 586, 320 S.E.2d 59, 64 (Ct.App.1984).

 Here, the trial court considered Lain's affidavit and her resume, the only evidence submitted on this issue. Although Lain's resume shows that she is a licensed residential builder and a licensed building inspector and teaches building codes to various groups, there is no evidence that she has

designed or constructed any structure. Although Lain may be versed in building codes and in the inspection of buildings, there is no evidence in the record that she has any architectural experience or training. The trial court did not abuse its discretion, therefore, in finding that Lain could not properly testify as to an architect's standard of care. *See Botehlo,* 282 S.C. at 588, 320 S.E.2d at 65 (an orthopedist was not qualified to testify as to the standard of care that a podiatrist must follow because the orthopedist lacked the requisite knowledge of podiatry).

■ Even if Lain were qualified as an expert witness in the field of architecture, she nevertheless did not state in her affidavit the standard of care required by an architect and the deviation from that standard of care. *See Gilliland v. Elmwood Properties,* 301 S.C. 295, 391 S.E.2d 577 (1990) (to survive summary judgment in a professional negligence case, a plaintiff must offer expert testimony to establish both the standard of care and the defendant's deviation from that standard); *City of York v. Turner–Murphy Co.,* 317 S.C. 194, 195–98, 452 S.E.2d 615, 616–17 (Ct.App.1994) (holding that if the plaintiff cannot meet the burden of proving that "the professional failed to conform to generally recognized and accepted practices in the profession," then the professional cannot be found liable as a matter of law). Lain stated the following in her affidavit:

3. Section 1118 of the 1978 Standard Building Codes with the 1980 and 1981 amendments require:

(c) Surfaces of ramps shall be of non-slip material

4. Discharging the flow of water from the guttering upon the ramp in climates that may freeze defeats the purpose of section 1118(c) of the Standard Building Code. The ice would make the ramp slippery and increase the possibility of an accident. This should have been obvious to the professional management group who observed the daily operations of the apartment.

5. After completion, the down spouts could have been routed away from the ramp area therefore preventing the water from being on the ramp. This would be rather inexpensive as no major modification of the building would be necessary.

Lain's affidavit fails to state the standard of care an architect must follow in this situation. There is no indication of the type of gutter system that a reasonable architect would use in this type of construction. Furthermore, there is no mention of how Narmour may have breached the architectural standard of care. There is also no evidence in the record indicating the specifications required by Narmour's plans. Although the affidavit mentions the building code requirement that ramp surfaces be of non-slip material, there is no evidence that Narmour's plans called for the use of any material other than non-slip material. Although the ice that formed may have rendered the surface slippery, this is different from an allegation that the architectural plans called for anything other than non-slip material. We must conclude, therefore, that Lain's affidavit not only fails to outline an architect's duty in designing gutter systems for the type of building involved in the instant case, it also fails to describe how Narmour may have breached such a duty.

█ Walker argues that no expert testimony is needed because the subject matter is within common knowledge or experience of laymen so that no special guidance is needed to evaluate the defendant's conduct. *Pederson v. Gould,* 288 S.C. 141, 341 S.E.2d 633 (1986). We need not address this argument because it is not properly before this court. The record shows that Walker argued the common knowledge exception in opposition to Narmour's motion for summary judgment. The trial court ruled that Walker's expert was not qualified, but did not explicitly rule on Walker's argument for application of the common knowledge exception.[2] *See Noisette v. Ismail,* 304 S.C. 56, 58, 403 S.E.2d 122, 124 (1991) (an issue raised to the trial court but not ruled on is not preserved and the complaining party must move before the trial court to amend the judgment pursuant to Rule 59(e), SCRCP).

**AFFIRMED.**

HUFF and HOWARD, JJ., concur.

---

2. Walker admits in his brief to this court that the trial court's "order granting summary judgment to ... [Narmour] makes no ruling on the [common knowledge] issue."