20590

TRUSTEES OF ERSKINE COLLEGE, Respondents, v. CENTRAL MUTUAL INSURANCE COMPANY, Auto Owners Insurance Company, Merchants and Business Men's Mutual Insurance Company, and Consolidated American Insurance Company, Appellants.

(241 S. E. (2d) 160)

*Wesley M. Walker, O. Doyle Martin,* and *Jack H. Tedards, Jr.,* of Greenville, *for Appellants,*

*J. E. McDonald* and *W. B. Patrick, Jr.*, of Greenwood, *for Respondents,*

January 26, 1978.

*Per Curiam:*

This is an action by the Trustees of Erskine College to recover on fire insurance policies, issued by the appellants, for a total loss to Wylie Home, a building on the Erskine campus. The lower court granted summary judgment in favor of Erskine and the insurers have appealed. We conclude that the entry of summary judgment was proper and affirm.

Appellants issued on July 1, 1973 policies of insurance providing blanket coverage to Erskine against risk of loss by fire, with limits of $100,000.00 for loss of Wylie Home and $5,000.00 for its contents. Wylie Home was destroyed by fire on October 16, 1974 and recovery was sought in Erskine's complaint for $105,000.00, the full coverage provided in the policies. The insurers (appellants), each of which had a percentage of total coverage, filed separate answers which interposed (1) a general denial and (2) that the coverage under the policies was suspended at the time of the loss because of the alleged violation by Erskine of the "vacancy" clause in the policies.

Both Erskine and the insurers moved for summary judgment. The lower court granted summary judgment in favor of Erskine and directed the insurers to pay their full coverage for loss of the building, plus interest and the value of the contents stored therein.

Erskine obtained the coverage in question through the Plaza Insurance Agency, which was the licensed agent for the appellant Central Mutual Insurance Company, but was not licensed as an agent for the other appellants. The coverage became effective as of July 1, 1973, and was to continue for a period of three years.

Each policy contains blank spaces on the first page labeled "location of premises" and "occupancy of premises." The first blank contains the words: "At locations shown on the latest statement of values filed by the insured with the insurance Services Office of South Carolina, Property being located in Due West, Abbeville County, . . ." The blank labeled "occupancy of premises" contains only the word "College."

The vacancy clause, upon which the appellants rely, provides:

Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring—

. . . . .

(b) While a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days.

The trial judge correctly set forth the facts with reference to the use of the building in question, and we adopt his statement.

Wylie Home was originally designed as a dormitory and so used for a number of years. In the late 1960's, the College planned to demolish and replace it with a newer facility. For this purpose, it sought a government loan. The loan was not approved and the change was not accomplished. The College continued to use Wylie as a dormitory through the 1971-72 school year and then discontinued using it for that purpose. Mr. Charles Carlisle, Vice President for Business Affairs of the College, wrote the Plaza Insurance Agency

on June 23, 1972, to the effect that Wylie Home would not be used as a dormitory for the school year 1972-73. At the close of the 1971-72 school year, the College began to use Wylie Home for storage purposes and continued to use it for that purpose up to the time of the loss. The exact nature and quantity of the items stored in the building varied from time to time depending upon the College's needs at a particular moment. At one time in 1973 a substantial quantity of shelving was stored in Wylie for use in connection with the expansion of McCain Library. However, this material was removed in late 1973. Thereafter, Wylie was used for general storage purposes, with building materials and miscellaneous items stored therein. The building was entered almost on a daily basis for the purpose of placing and removing material therein. . . . At the time of the fire, the stored materials had a value of FIFTEEN HUNDRED ($1,500.00) DOLLARS.

The circuit judge rejected appellants' argument that the non-use of Wylie Home for dormitory residence purposes rendered it "vacant or unoccupied" within the meaning of the "vacancy" clause set forth above. We agree that the policy permitted occupancy for storage purposes and that the vacancy clause was not violated by such use.

As a general rule, the terms "vacant or unoccupied" as used in insurance policies "imply a situation in which the insured building or premises are without an occupant of the kind, and during the time, contemplated by the intention of the parties, *as indicated by the terms and descriptions of the policy.*" 43 Am. Jur. (2d) Insurance, Section 947. (Emphasis added.) See also: *Rainwater v. Maryland Casualty Company of Baltimore,* 252 S. C. 370, 166 S. E. (2d) 546 and 36 A. L. R. (3d) 505, 510. Wylie Home was not being used as a dormitory at the inception of the policies. The policies' terms provided only that the premises were to be used for "college" purposes. A college's use of a building for storage is as much a "college" use as

is use for a dormitory or a classroom. Entry of the building incidental to its use for storage is sufficient occupancy to prohibit a suspension of coverage under the policy. We find no error in the lower court's conclusion that use for storage precludes the operation of the "vacancy" clause.

The appellants argue that the record does not show that they had any actual or constructive knowledge that Wylie Home was being used for storage or that such use was "contemplated," which term, they argue, signifies not only knowledge, but also an understanding or accord. The answer to this contention is that the insurers' knowledge is irrelevant to the present determination as "contemplated" use is determined by the terms expressed in the contract.

Th appellants also argue that the name of the building, "Wylie Home" requires the conclusion that its use for lodging as a dormitory was contemplated by the parties. The specific designated use in the contract was for "college" purposes and that designation is controlling. The fact that the building's name is found elsewhere in the policy does not raise an ambiguity, in our opinion, as to the contemplated use of the building. Assuming that an ambiguity did exist, however, it would be a patent ambiguity and, under South Carolina law, the construction most favorable to the insured would have to be adopted. *Grayson v. Aetna Insurance Company*, 308 F. Supp. 922, 926 (D. S. C.); *Hann v. Carolina Casualty Insurance Company*, 252 S. C. 518, 167 S. E . (2d) 420, 423.

It remains to be determined whether a factual issue exists as to the actual use of the building for storage purposes. The appellants point out that certain newspaper articles refer to the fact that items stored in the building had been removed prior to the fire and that the building had been out of use for three years. These articles are unsworn statements and contain hearsay evidence; they are not to be considered in a motion for summary judgment.

See Circuit Court Rule 44(d), 6 Moore's Federal Practice, Section 56.22[1], N. 24 (1976).

The appellants also maintain that depositions by various insurance company representatives raise a genuine issue as to actual storage in that they relate statements made by the Vice President for Business Affairs of Erskine, Dr. Carlisle, tending to prove actual vacancy. An examination of the record, however, reveals that these statements may not be reasonably interpreted as proof that Wylie was devoid of contents. The declarations of Dr Carlisle are to the effect that the building was "vacant" in the sense that it had ceased to be used as a residence hall or dormitory, not that it was devoid of contents. The fact that he stated that there was "nothing of any importance" in the building merely shows his opinion of the relative value of the items stored therein.

The trial judge correctly concluded that, under the terms of the policies and as a matter of law, the use of Wylie Home for storage precluded a suspension of coverage under the "vacancy" clause. Certain employees of Erskine College asserted in their depositions that the facility was used up until the time of the fire for the storage of building materials and miscellaneous campus equipment. Since no genuine issue of fact was presented as to the actual use of the facility for storage, entry of summary judgment in favor of Erskine was required.

The judgment is accordingly affirmed.